May it please the Court, in this case, the ALJ failed to properly evaluate the medical evidence. By Orne, Dr. Rowe's opinion is entitled to the greatest weight. The consultative examiner, Dr. Rowe. Why should we even worry about that? Because Dr. Rowe's opinion was not before the ALJ. Well, because it was properly before the appeals counsel. That may be true. The appeals counsel denied reconsideration and the, at least as I read it, 405G limits our review to the review of the record that was before the ALJ. I believe it limits the record to the review that was at the last final decision. The appeals counsel was the last final decision. That's not because it just denied review. The last final decision is the decision of the ALJ, isn't it? But it's the decision of the commissioner at the appeals counsel level. And they affirmed, the appeals counsel affirmed the ALJ's decision. And they mentioned in their denial that they had seen Dr. Rowe's opinion and that Dr. Rowe's opinion, and that they had chosen not to change the ALJ's determination. That was error, because that evidence was properly before them. You're not appealing the appeals counsel's decision, and you're not appealing that it was error not to consider it. You're just making, you're proceeding, I think, here, aren't you, as you did in the district court, on the assumption that Dr. Rowe's opinion is part of the mix, that we should review. Well, under the, I'm sorry, under the Kugas case, it is properly part of the mix. And I'm appealing the commissioner's decision, and it's the appeals counsel that issued the commissioner's decision. So I do believe it is part of the record, properly part of the record. The district court found so as well. However, they discounted him. No, the district court just bought into the assumption that it should be treated as part of the record before the ALJ. I'm not disputing that it's part of the record. Okay. But it wasn't before the ALJ, right? Yes. So it's the commissioner that failed to properly evaluate the medical evidence. Under, by Ornn, it's entitled to the greatest weight. And in addition, I would point out that at finding number four, the ALJ himself said that there were one to two episodes of decompensation, of deterioration and work-like episodes. And with that, he also asked the vocational expert a stress limitation, which is what that corresponds to. The vocational expert said that there was no jobs at page 485. And because that connection isn't as clear, I also pointed out that the state agency who had the entire record, which Dr. McRae did not, the consultative examiner, and when they had the record, they found a moderate limitation in detailed work, essentially a limitation to simple work. They also found a social limitation, moderate social, not dealing with the public. That question was asked of the vocational expert. And at page 489, the vocational expert said that there would be no jobs. So I think any way you put it, I don't believe that the commissioner's determination survives the test of substantial evidence as far as finding of non-disability. With regard to the credibility analysis, I believe it rests on positive Waddell's findings. I think the cases and the research is clear that Waddell's is not indicative of malingering, particularly when you have pain cases and when you have fibromyalgia, particularly, and psychiatric cases. There aren't any published Ninth Circuit determinations that I'm aware of. But in the Kirshner case, they were very specific about it. And the Waddell's, and with the research that I attached, Waddell himself has said it is inappropriate to use Waddell's in those types of cases. And it's a misuse of the Waddell's sign. And in particular in this case, it was the internal internist that found the Waddell's. And what the cases tend to say is if you find Waddell's there, then turn it over to somebody who knows about psychiatric matters and can truly assess these things. But that isn't what happened in this case, nor in any of the other cases, actually. So the Waddell's reasoning was rejected, and I think it should be rejected here. The only reasoning left is that is a difference. She told something different at the hearing versus something different to the consultative examiner. And what that boiled down to was she, the consultative examiner said that she could walk down the hall, sit on the examining table, and take off her socks, which is a different situation than trying to get into a bathtub that doesn't have something that you can hold on to, and do other hygiene-type things, which is what she had said before, which she could not do. And the only other offering that the commissioner had said was that the examiners disagreed, which goes back to the first reasoning, which the medical evidence, I don't believe, has been properly evaluated. And I think that I would request a favorable determination. Okay. I'm going to save the rest of your time. Sure. Thank you. Thank you. My name is Mark Winn, appearing for Commissioner Michael J. Astrew. And first going to that March 2006 assessment signed by the nurse practitioner before the ALJ, it is, in fact, the ALJ's decision, which is before the Court. And the Appeals Council, at the juncture they reviewed the case, all they do is decline or accept review of the case. And in this case, they declined review of the case. And they specifically state in their notice that the ALJ's decision remains the final decision of the commissioner. Okay. Well, so what is the government's position on the proposition that I was talking about with Ms. Haley? With regard to? Well, that is that the doctor's opinion was not before the ALJ, and we, therefore, should not consider it as part of the mix unless the criteria under 405G are met. The government agrees that 405G contemplates only what's before the ALJ most proper. Well, unless it's unless it's good cause and unless the document is material, in which case our option would be to remand and have the ALJ consider it. That's the other option under 405G. That is correct. In this case, we would submit that remand wouldn't be necessary. Regardless of whether the opinion were considered just a nurse's opinion, a nonacceptable medical source, or the opinion of a doctor, the ALJ's treatment of the evidence was sufficient to withstand scrutiny under either situation. Most importantly, the ALJ noted the inconsistencies between that very extreme May-March 2006 assessment and the actual treatment records from her own treatment providers, whether it be the nurse practitioner or Dr. Rowe. And if we go down to the actual records themselves, leading up to that March 2006 assessment, we have she began treatment in September 2005, and already as of October 4, 2005. This is in 379 of the transcript. By that time, she already had an essentially normal psychiatric examination. The objective findings, which are at the bottom of that page, show neat grooming, normal speech, good eye contact, an unremarkable psychomotor examination, cooperative behavior, a normal mood, appropriate affect, unremarkable thought process and content, intact attention and concentration, average intelligence and intact orientation, and fair insight, memory, and judgment. And the subsequent treatment notes after that show only improvement, in fact. In the reports that month and a few months thereafter, in January 2006 and November 1, 2005, the memory was now, her insight, memory, and judgment were all now good rather than fair. So, by that point, we're having completely normal findings, and it's not just normal positive signs. It's also the complete absence of any signs of any problems, any abnormal findings of any kind at that point. That's why this is what the LJ had in front of him when he was confronted with the March 2006 assessment, which at that time was signed by a nurse practitioner. And not only the treatment notes from claimants on doctors, but the LJ also had the constitutive examination of Dr. McRae, and that was also an essentially normal examination. And Dr. McRae also had an opinion as to the claimant's limitations, which were essentially none. And with that evidence in front of him, it was very reasonable for the ALJ to make the determination that these were not disabling impairments. And going to the issue of the Waddell signs, that wasn't the only reason for rejecting the claimant's credibility. There were a host of factors. One factor, of course, are the objective findings. And in this case, as we just discussed, objective findings were overwhelmingly against finding any functional limitations. Secondly, you also consider the medical opinions of treating and examining physicians and non-examining physicians. And we have Dr. McRae, we have two state agency physicians, Dr. O'Brien, who found essentially no limitations. And with regard to the Waddell signs, which claimants are referring to right now, it's Ozenbrock v. Apfel, this Court, found that that also can be a factor in the credibility determination. And significantly in this case, claimants are arguing that perhaps this denotes a psychiatric component to this. We would say that's actual record evidence. This is not something that was also before the ALJ. None of the information about Waddell signs. And also, it's notable that in the record itself, it's on 411 of the transcript. And that would be 411, Volume 3 of the Excerpt of Record. There's a query to claimant's own physician saying this. Does a psychiatric condition exacerbate your patient's experience of pain or any other physical symptom? And the treating source's answer was no. So even if this Court were to look at this claim, which is after the record as to Waddell signs, this theory that there's some kind of psychiatric component to the whole mix isn't supported by the record. Given if we were to delve into the record itself. And if the panel doesn't have any more questions, I'm ready to. I don't think so. Okay. Thank you. Ms. Haley. In response, I do believe the Dr. Rowe's opinion was properly before the Court, as I had mentioned before. Under the Ramirez case as well, remand would be. Ramirez doesn't discuss 405G. Right.  It's 405G. Okay. And this particular problem wasn't called to that panel's attention. Well, I am not disagreeable to a remand, Your Honor. With regard to some of the points that were made, Dr. Rowe's records from the Kern Valley do indicate rather limited mental status examination findings. And if it were the case that all I had was Dr. Rowe's March 2006 opinion, but I didn't have his initial evaluation in September of 2005, I wouldn't have made the argument. But the fact is, when you are a county facility, you're dealing with people all the time, you're not going to write the specific amounts of detail in every single note. Because you know what that person is the very first time they walked in. And you made your analysis. And for him to write the same thing, which is quite consistent with the September 2005 opinion, means that she's been that way the whole time. Dr. McRae, her findings are actually consistent with many of Dr. Rowe's opinions and findings. In the first brief, they note many of the same things. The only differences that they really noted was on affect, and she didn't admit that she thought of suicide at times. Which I think is quite reasonable when you're dealing with a one-time examiner, you've never met them before, they're generally very short meetings, to not go into that depth at that time. And to, in fact, on the affect, Dr. McRae said, her mood is sad, but she has normal affect. So it's somewhat inconsistent there. And to treat the record as it just has no support for a mental component, I think, is to treat it too superficially. Psychiatric patients aren't the best at getting their treatment. So, as the Wynn case points out. But also, with regard to the credibility, as I mentioned just before, I don't believe that Dr. McRae's findings are entirely normal, though her opinion says no limitations. If you look closely, that is a mental status examination. That is a screening test for mental disorders of a wide range. So anything that is particularly unusual, yeah, they're going to note it, and they're going to do something about it. Yet, for the average person who has, well, not the average person, but for a person who may not have all those things blatantly showing in that 10-minute glance that the consultative examiner has, I don't think that it's, I don't think that, I think that it is supported, the psychiatric is supported by the record. And the Atzenberg case, I do not believe is applicable. They presented seven rationale to reject the testimony, which is not the case that we have here, and I would respectfully ask for a reversal and remand for the payment of benefits, but any other alternative for the correction of legal error. Okay, thank you very much. Thank you, counsel, for your argument. The matter just argued will be submitted.
judges: Wu, Goodwin, Rymer